UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                      Plaintiff,

          v.

EDENILSON VELASQUEZ LARIN, JOSE ESPINOZA SANCHEZ, JOSE AREVALO IRAHETA, AND HUGO DIAZ AMAYA

                      Defendant.

**MEMORANDUM AND ORDER**

20-CR-228 (LDH)

---

LaShann DeArcy Hall, United States District Judge:

      Presently before the Court is Edenilson Velasquez Larin's ("Defendant Larin") motion for reconsideration, pursuant to Local Criminal Rule 49.1(b) and Federal Rule of Criminal Procedure 12(c)(3), of this Court's August 6, 2025 Order, which denied Defendant Larin's motion to suppress certain evidence seized following a traffic stop.[1] (*See* Def.'s Mot. Recons., ECF No. 937.)

## BACKGROUND[2]

      On June 7, 2023, Defendant Larin was traveling as a passenger in a vehicle (the "Vehicle") on the Ohio Turnpike. (Def.'s Mot. Suppress at 1-2, ECF No. 823; Gov't's Opp'n. Def.'s Mot. Suppress ("Gov't's Suppress Opp'n") at 2, ECF No. 849.) The Vehicle in which Defendant Larin was traveling was a 2023 Toyota Highlander. (Gov't's Ltr., Ex. 1 at 7, ECF No. 971-1; Gov'ts Ltr., Ex. 2, ECF No. 971-2.)

---

[1] By Order dated August 6, 2025, the Court denied Defendant Larin's motion to suppress and stated that it would articulate its rationale as to this ruling at a status conference scheduled for August 19, 2025. At the August 19, 2025 status conference, the Court articulated its rationale. On September 2, 2025, Defendant Larin filed the instant reconsideration motion.

[2] The Court assumes the parties' general familiarity with this case and the underlying motion. Accordingly, the Court recites only the facts relevant to Defendant Larin's reconsideration motion.

1

While the Vehicle was travelling on the Ohio Turnpike on June 7, 2023, Ohio State Highway Patrol Trooper Jacob Dickerson ("Trooper Dickerson") observed the Vehicle driving approximately 70 miles per hour—the speed limit—behind a large truck.  (*See* Def.'s Mot. Recons. at 3; Gov't's Suppress Opp'n at 2.)  However, according to the Government, Trooper Dickerson believed the Vehicle was traveling at an unlawfully close distance to the truck in front of it.  (Gov't's Suppress Opp'n at 2; Nacelewicz Aff. ¶ 96.a.)  As such, Trooper Dickerson proceeded to follow and monitor the Vehicle, at which point he observed the driver begin to operate the Vehicle in a purportedly suspicious manner.  (Gov't's Suppress Opp'n at 3-4; Nacelewicz Aff. ¶ 96.b.)  As Trooper Dickerson continued to monitor the Vehicle, he, again, observed the Vehicle traveling at what he believed to be an unlawfully close distance to the truck traveling in front of it.  (Gov't's Suppress Opp'n at 4; Nacelewicz Aff. ¶ 96.b.)  Trooper Dickerson then activated his overhead lights and pulled over the Vehicle for violating Ohio Rev. Code section 4511.34, which prohibits operators of motor vehicles from following another vehicle more closely than is reasonably prudent.  (Def.'s Mot. Suppress at 2; Gov't's Suppress Opp'n at 4; Nacelewicz Aff. ¶ 96.c.)

Upon stopping the Vehicle, Trooper Dickerson retrieved identification documents from each passenger.  (Def.'s Mot. Suppress at 2; Gov't's Suppress Opp'n at 2.)  After Trooper Dickerson proceeded to research the passengers based on the identification documents provided, Defendant Larin was arrested on immigration charges and his phone was seized along with two other phones possessed inside the Vehicle.  (Def.'s Mot. Suppress at 3; Gov't's Suppress Opp'n at 4-5.)  The seized phones were subsequently searched pursuant to a search warrant issued by United States Magistrate Judge Darrell A. Clay of the Northern District of Ohio.  (Gov't's Suppress Opp'n at 5-6.)

On April 13, 2025, Defendant Larin filed a motion to suppress certain evidence obtained from the seized phones on the sole basis that the traffic stop that lead to their seizure was unlawful, thus making the evidence seized "fruit of the poisonous tree." (*See generally* Def.'s Mot. Suppress.) This Court subsequently denied Defendant Larin's suppression motion. (*See* Order, dated August 6, 2025.) And, on August 19, 2025, the Court explained its rationale for denying Defendant Larin's suppression motion during a status conference with the parties. Specifically, the Court noted, in part, that it was reasonable for Trooper Dickerson to believe that the driver of the Vehicle had committed a traffic violation, thus making the complained of traffic stop lawful. Defendant Larin's instant motion for reconsideration followed.

## DISCUSSION

In this Circuit, the standard of review for motions for reconsideration is the same under Local Criminal Rule 49.1 as it is under Local Civil Rule 6.3 and the Federal Rules of Civil Procedure. *United States v. Rice*, No. 96-CR-407 (SJF), 2015 WL 7459925, at *1 (E.D.N.Y. Nov. 24, 2015); *see also United States v. Wilson*, 920 F. Supp. 2d 287, 292 n.3 (E.D.N.Y. 2012) (applying the standard for motions for reconsideration in civil cases to the motion for reconsideration under Local Criminal Rule 49.1 since the language of that rule is identical to Local Civil Rule 6.3). "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Mauze v. CBS Corp.*, No. 15-CV-4905, 2019 WL 8137641, at *2 (E.D.N.Y. Jan. 23, 2019) (citation omitted). That said, "[t]he standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds

justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted). Of course, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Here, much of Defendant Larin's arguments in support of his reconsideration motion equate to an improper rehashing of issues previously addressed by this Court. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (reconsideration motions are not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'" (citation omitted)). Indeed, aside from mere conjecture, Defendant Larin neither points to a change of controlling law nor the availability of new evidence. (*See generally* Def.'s Mot. Suppress.) Furthermore, the lack of authority cited by Defendant Larin illustrates how his arguments regarding clear error lack any basis. In any event, it is plain to the Court that Defendant Larin's suppression motion was rightfully denied.

The Fourth Amendment to the United States Constitution provides individuals the right to be free from unreasonable stops and seizures. U.S.C.A. Const. Amend. 4. Of particular relevance here, even the temporary detention of an individual during a traffic stop constitutes a "seizure" of the person. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The determination of whether a seizure is reasonable is predominantly an objective inquiry asking "whether 'the circumstances, viewed objectively, justify the challenged action.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (alterations and citations omitted). In Ohio, as in New York, it is well settled that, consistent with the Fourth Amendment, an officer may stop a car when he

4

observes a driver violate a traffic law. *United States v. Hughes*, 606 F.3d 311, 315-16 (6th Cir. 2010); *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009).

Against this backdrop, Defendant Larin complains that his right to be free from unreasonable seizures was violated when the Vehicle was stopped for a traffic infraction on June 7, 2023. (Def.'s Mot. Recons. at 4.) That is, according to Defendant Larin, when the Officer stopped the Vehicle, he lacked reasonable suspicion of any traffic violation, thus making the stop itself unlawful. (*Id.*) The Court disagrees. In fact, there can be no question as to whether the Vehicle was traveling in violation of Ohio Rev. Code section 4511.34—it is just math.

"Section 4511.34 [of Ohio Traffic Law] 'requires one-car length between vehicles for every ten miles per hour of speed,'" which is "consistent with the Ohio State Highway Patrol guideline." *United States v. Johnson*, No. 1:23-CR-258, 2023 WL 6879755, at *4 (N.D. Ohio Oct. 18, 2023) (citation omitted); *United States v. Bonilla*, 357 F. App'x 693, 695 (6th Cir. 2009) ("Section 4511.34 requires one car-length between vehicles for every ten miles per hour of speed.") Prior to the complained of stop, Trooper Dickerson perceived the Vehicle traveling in compliance with the speed limit at approximately 70 miles per hour. (Gov't's Suppress Opp'n at 2.) Defendant Larin does not dispute this. (*See* Def.'s Mot. Recons. at 3 ("the Latino driver was driving at a lawful speed"). At this speed, the driver should have allowed for approximately seven car lengths between the Vehicle and any other car in front of it. *See Johnson*, No. 1:23-CR-258, 2023 WL 6879755, at *5 (applying the same rationale).) The Vehicle in which Defendant Larin was a passenger—a 2023 Toyota Highlander—is 16.2 feet in length.[3]

---

[3] The Court takes judicial notice of the length of a 2023 Toyota Highlander as reported by Toyota Motor Corporation. *See* https://www.toyota.com/content/dam/toyota/brochures/pdf/2023/highlander_ebrochure.pdf; Fed. R. Evid. 201(b)(1) ("The Court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *United States v. Sessa*, No. 92-CR-351 ARR, 2011 WL 256330, at *25 n.12 (E.D.N.Y. Jan. 25, 2011) (acknowledging the same), *aff'd*, 711 F.3d 316 (2d Cir. 2013).

Accordingly, the Vehicle was required to be no less than 113.4 feet behind the truck in front of it (7 x 16.2ft = 113.4ft).

As shown in the zoomed-in photograph contained in the Government's opposition, there were two and one-half lane lines between the Vehicle and the truck ahead of it prior to the Vehicle being stopped. (*See* Gov't's Suppress Opp'n at 14.) According to the Ohio Department of Transportation, the lane lines on the Ohio Turnpike are each 10 feet long and are separated by 30-foot gaps.[4] As such, the Vehicle was traveling about 85 feet behind the truck in front of it at this time ((10ft x 2.5) + (30ft x 2) = 85ft). These facts alone make it reasonable for Trooper Dickerson to have believed the Vehicle was being operated in violation of section 4511.34 of Ohio Traffic Law because the Vehicle was, in fact, being operated in violation of section 4511.34. *See Johnson*, No. 1:23-CR-258, 2023 WL 6879755, at *5 ("Having found that the evidence supports a finding that [the officer] reasonably believed that [defendant] was in violation of § 4511.34, the Court concludes that the . . . stop was also constitutionally permissible."). The Court points out that, even if Defendant Larin is correct that the Vehicle "was travelling at least 90 feet behind the truck in front of it" (Def.'s Mot. Recons. at 5), the complained of stop would still be constitutionally permissible as 90 feet is less than the amount of distance Ohio Traffic Law dictates the Vehicle should have been from the truck in front of it—113.4ft.

Moreover, Trooper Dickerson need not have been mathematically correct about how far apart the Vehicle and truck were for the Court to conclude the stop to was constitutionally

---

[4] The Court takes judicial notice of the length of the lane lines and the distance between them as represented by the Ohio Department of Transportation. *See* https://www.transportation.ohio.gov/working/engineering/roadway/manuals-standards/tem/03#:~:text=Auxiliary%20markings%20shall%20be%20defined,lines%20shall%20be%20as%20follows. (last accessed September 26, 2025).

6

permissible under the Fourth Amendment. That is, to comport with the Fourth Amendment, the belief of a traffic violation need only be reasonable. *Whren v. United States*, 517 U.S. 806, 817 (1996); *Johnson*, No. 1:23-CR-258, 2023 WL 6879755, at *5. This is true irrespective of the actual motivations of the individual officers involved. *Whren*, 517 U.S. at 813 ("these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"); *see also United States v. Sanford*, 476 F.3d 391, 395 (6th Cir.2007) ("[The officer's] ulterior motivations, if any, are irrelevant.") And, the Supreme Court has "said repeatedly that [Courts] must look at the 'totality of the circumstances' of each case to see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing.'" *United States v. Arvizu*, 534 U.S. 266, 273-274 (2002) (citation omitted). Here, there undoubtedly was.

## CONCLUSION

For the foregoing reasons, Defendant Larin's motion for reconsideration is DENIED.

SO ORDERED.

Dated: Brooklyn, New York  
     October 3, 2025

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge